UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

David Buchko, Jr.,

    Plaintiff,

v.

Monroe, County of, et al.,

    Defendants.
                                 /

Case No. 09-13532

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [15]**

Plaintiff David Buchko, Jr. ("Plaintiff"), is a deputy at the Monroe County Sheriff's Office (the "Sheriff's Office"). He has filed this civil rights action, pursuant to 42 U.S.C. § 1983, alleging that Monroe County, the Sheriff's Office, and Monroe County Sheriff Tilman Crutchfield ("Sheriff Crutchfield") violated his First Amendment rights to free speech and association. Plaintiff claims that Defendants retaliated against him for exercising his First Amendment rights by not promoting him to a sergeant's position. To support his belief, Plaintiff argues that Sheriff Crutchfield was motivated to not promote Plaintiff because (1) Plaintiff had voted in favor of a position adverse to the Sheriff's Office and because (2) Plaintiff supported Sheriff Crutchfield's opponent in an election.

This matter is now before the Court on Defendants' Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. Because Plaintiff has not established a causal link between his First Amendment rights and Sheriff Crutchfield's failure to promote him, the Court GRANTS Defendants' Motion for Summary Judgment.

**I.**     **Facts**

## A. The Parties

At the core of this controversy is the relationship between Plaintiff and Sheriff Crutchfield. Sheriff Crutchfield is the current Monroe County Sheriff and has been the sheriff since January 1, 1997. (Crutchfield Dep. at 4.) As sheriff, he alone has the ability to hire, fire, discipline, and promote Sheriff's Office employees, including deputies. (*Id.* at 8-9, 17.) In 1997, Sheriff Crutchfield, in his official capacity, but not personally, hired Plaintiff as a sheriff's deputy. (Pl.'s Dep. at 10.) Despite working at the Sheriff's Office for over ten years, Plaintiff has never received a promotion. (Crutchfield Dep. at 13.)

## B. Promotions at the Sheriff's Office

At the Sheriff's Office, a collective bargaining agreement (the "CBA") between Monroe County, the Sheriff's Office, and the Police Officers Association of Michigan ("POAM") governs promotions. (Defs.' Mot. for Summ. J. at 3.) Section 11.8 of the CBA states that "[w]hen the Sheriff determines that an opening or vacancy exists for promotion to the position of Sergeant, employees covered by this agreement shall be eligible for consideration." (*Id.*) The CBA requires the Sheriff to "evaluate all applicants . . . in accordance with the point allocation system." (*Id.*) The CBA continues

> The Sheriff will evaluate all applicants . . . in accordance with the point allocation system . . . . The Sheriff shall promote either of the top two (2) employees with the highest point total in accordance with such evaluation from the current eligibility list. A promotion list once established shall be used for two (2) years or until exhausted . . . . Once an eligibility list is established, a copy of the entire list of employees who have passed and are eligible for promotion will be provided to the POAM with ranking. *An eligible employee cannot be bypassed for promotion more than one (1) time.*

(*Id.*) (Emphasis added.) The eventual rankings are calculated by combining points from a promotional examination held every two years, seniority points, and "sheriff's points" that

2

the sheriff determines and awards based on education, experience, and training. (Pl.'s Dep. at 114.)

### C. **Plaintiff's Promotion Eligibility**

In 2002, Plaintiff became eligible to take the promotional examination. (Crutchfield Dep. at 35.) Plaintiff's scores on his first test did not place him in the top two positions on the 2003-2005 promotion eligibility list. (Pl.'s Resp. at 2.) Plaintiff took the next exam, in October, 2005, and achieved the highest score on the exam and ranked second overall on the 2006-2007 promotional eligibility list. (2006-2007 Promotional Eligibility List, Pl.'s Resp., Ex. A.) In 2007, Plaintiff took the 2008-2009 promotion eligibility test. He again earned the highest score and again ranked second on the 2008-2009 promotion eligibility list. (2008-2009 Promotional Eligibility List, Pl.'s Resp., Ex. B.) And in 2010, he once more attained the highest score on the test. (Pl.'s Resp. at 2-3.)

### D. **Plaintiff's First Retaliation Allegation and Promotion Bypass**

Plaintiff alleges that Sheriff Crutchfield retaliated against him because of an action he took as an elected member of the Monroe Public Schools Board of Education (the "Board"). (Pl.'s Dep. at 58.) In July, 2004, Plaintiff, as a private citizen, became a member of the Board. (*Id.* at 41.) On July 19, 2004, as a member of the Board, Plaintiff voted in favor of Monroe County Public Schools budget reductions that eliminated at least one Sheriff's Office liaison position at Monroe County Public Schools. (*Id.* at 44-45; Monroe County Board of Education Meeting Minutes, Defs.' Mot. for Summ. J., Ex. 3.) The Board passed the budget reductions by a vote of five to one. (Monroe County Board of Education Meeting Minutes, Defs.' Mot. for Summ. J., Ex. 3.) Plaintiff is "certain that the sheriff was aware of

the vote," although he has no documents or proof of his certainty. (Pl.'s Dep. at 49.) Sheriff Crutchfield stated that he did know that the Board reduced its budget and thereby eliminated a liaison position, but he also stated that he did not recall Plaintiff's participation or vote. (Crutchfield Dep. at 78.)

Two years after the vote, in July, 2006, a sergeant position opened up and Sheriff Crutchfield promoted Deputy Geoffrey Kovenich ("Kovenich") to that position. (Pl.'s Dep. at 55.) In December, 2006, another sergeant position opened up and Sheriff Crutchfield promoted Jeff Kemp ("Kemp") to the position. (*Id.* at 56.) Kemp had been third on the promotion eligibility list at the time of Kovenich's promotion behind Plaintiff and Kovenich. (*Id.*) When Plaintiff learned that he had been bypassed in December, he went to Sheriff Crutchfield's office to discuss the reason for Kemp's promotion and not his own. (Pl.'s Dep. at 24.) Sheriff Crutchfield told Plaintiff that since Kemp was a K-9 officer and the Sheriff's Office needed a K-9 supervisor, he promoted Kemp instead of Plaintiff. (*Id.* at 25; Crutchfield Dep. at 46.) During the conversation, Plaintiff recalls that Sheriff Crutchfield promised him the next promotion. (Pl.'s Dep. at 25.)

Ultimately, Plaintiff left the conversation with the feeling that Sheriff Crutchfield was untruthful. (*Id.* at 26.) He had this feeling because he "didn't believe" that there was a need for Kemp to be promoted to the K-9 supervisor position or a need for the K-9 supervisor position in the first place. *(Id.)* Plaintiff also believes that Kemp received the promotion because Kemp had been actively involved in a campaign against budget reductions at the Sheriff's Office. (*Id.* at 26-27.) He was not promoted, he alleges, because he did not support the Sheriff's Office when he voted on the Board. (*Id.* at 30.) He asserts this allegation from information he obtained from Sandy Galimberti. (*Id.* at 31.)

4

Sandy Galimberti, the wife of Detective Sergeant Enrico Galimberti, told Plaintiff of a conversation between her husband and Major Larry Clock, in which Major Larry Clock said that Plaintiff would not be promoted because he had not supported Sheriff Crutchfield when voting on the Board. (*Id.* at 30-31.) Plaintiff also asserts that there were "rumors in the [Sheriff's Office]" that suggested he did not receive the promotion because he supported the Board budget reduction that eliminated the Sheriff's Office liaison positions. (*Id.*) Plaintiff attributes part of these rumors to Sandy Galimberti. (*Id.*) The other part Plaintiff attributes to a conversation he had with Sergeant John Plath ("Plath"), in which Plaintiff suggested to Plath that his Board vote was the reason he did not receive the promotion. (*Id.*) Plaintiff grieved Kemp's promotion; Monroe County denied the grievance, and Plaintiff's union refused to arbitrate. (*Id.* at 35.)

Since the December, 2006, meeting in Sheriff Crutchfield's office, Plaintiff has had only one communication with Sheriff Crutchfield. (*Id.* at 39.) That communication took place in December, 2008, and was in email form. (*Id.*) Plaintiff requested to visit Sheriff Crutchfield in person; Sheriff Crutchfield denied the request. (*Id.*)[1]

### E. Plaintiff's Second Retaliation Allegation and Promotion Bypass

Plaintiff also believes that Sheriff Crutchfield retaliated against again him because of his vote on the Board in 2004 as well as his support of Sheriff Crutchfield's opponent in the

---

[1] In January, 2007, after Kemp's promotion, Plaintiff voted, again solely as a member of the Board, to privatize certain Monroe County Public Schools services. (Pl.'s Resp. at 3.) In response to this vote, Mark Evans, the Chairman of the Monroe County Educational Association, sent a letter to Plaintiff, expressing shock in Plaintiff's vote. (Evans Letter, Pl.'s Resp., Ex. C.) Dave La Montaine ("La Montaine"), the president of the Monroe County Deputy Sheriff's Association ("MCDSA"), responded on Plaintiff's behalf, stating that Plaintiff's vote was his own and did not represent the views of the MCDSA. (Pl.'s Resp. at 3-4.) Plaintiff does not stress this incident in either of his counts.

5

2008 sheriff's election. In January, 2008, Plaintiff began supporting Lieutenant Troy Goodnough ("Goodnough") for Monroe County Sheriff. (Pl.'s Dep. at 62-63.) Although Plaintiff insists he did support Goodnough, he offers little evidence to support this conclusion. Plaintiff does recall sending a personal email out to friends, inviting them to a fundraiser, but he does not know whether Sheriff Crutchfield ever saw the email. (*Id.*) Plaintiff, in addition, never gave a speech on Goodnough's behalf, never made a statement in the paper on Goodnough's behalf, never criticized Sheriff Crutchfield publicly, and never had any conversations with Sheriff Crutchfield regarding Goodnough. (*Id.* at 63, 67-68.)[2]

During the election, La Montaine, Sheriff Crutchfield's campaign manager, sent two emails that Plaintiff offers to show Sheriff Crutchfield's retaliatory motive in bypassing Plaintiff for promotion. On March 11, 2008, La Montaine sent an email to a list of people, including Plaintiff, regarding his role as chair to Sheriff Crutchfield's re-election campaign. (March 11, 2008 La Montaine Email, Pl.'s Resp., Ex. F.) In this email, La Montaine explained how his role as President of MCDSA would not conflict with his role in Sheriff's Crutchfield's campaign. He also requested each email recipient: "search your own feelings on who you support." (*Id.*) He concluded, "[u]nderstand that this process involves winners [and] losers, and to the victors go the spoils." (*Id.*) He added the post script, "i have crutchfield for sheriff bumper stickers if anyone wants one." (*Id.*) Plaintiff has no documents or information linking Sheriff Crutchfield to the La Montaine March 11, 2008

---

[2]Plaintiff does insist that he criticized Sheriff Crutchfield to some of his friends and co-workers. (Pl.'s Dep. at 63, 67-68.)

6

email.  (*Id.* at 81.)  Yet he continues to believe that Sheriff Crutchfield had knowledge of the email, based on La Montaine's status as Sheriff Crutchfield's campaign manager.  (*Id.*)

When questioned about this email, La Montaine stated that he alone authored the email and that the email had nothing to do with his role as chair of Sheriff Crutchfield's campaign.  (La Montaine Dep. at 17.)  With regards to the "victors go the spoils" comment, La Montaine stated that "there's jeopardy anytime you involve yourself in campaigns.  People win.  People lose. Things happen."  (*Id.* at 19.)  Sheriff Crutchfield maintains that he had no knowledge of the March 11, 2008, email and that he did not recall ever seeing the email.  (Crutchfield Dep. at 87-88.)

On July 1, 2008, La Montaine sent another email that Plaintiff obtained, although Plaintiff was not an original recipient.  (July 1, 2008 La Montaine Email, Pl.'s Resp., Ex. H.)  In this email he expressed his disappointment in the recipients' levels of involvement in Sheriff Crutchfield's re-election campaign.  (*Id.*)  He stated that "the Sheriff views those who are campaigning against him as people who are trying to get him fired.  Loyalty is very important to him."  (*Id.*)  Each member of MCDSA, he continued, has "responsibilities."  (*Id.*)  La Montaine communicated that "[Sheriff Crutchfield] has asked for your help.  I would offer it."  (*Id.*)   He closed his email: "If our paths don't cross on the campaign trail, your actions will speak for themselves."  (*Id.*)

When discussing this email, La Montaine did state that he had had conversations with Sheriff Crutchfield regarding those people who were campaigning against him.  (*Id.* at 20.)  But La Montaine could not remember the nature of the conversations, or precisely when they took place.  (*Id.*)  He did assume that he spoke with Sheriff Crutchfield before he sent the email.  (*Id.* at 21.)

Sheriff Crutchfield states that he did not have a conversation with La Montaine before La Montaine sent the email out. (Crutchfield Dep. at 82.) After La Montaine sent the email, Sheriff Crutchfield told him that he thought the email was inappropriate and asked him to stop sending such messages. (*Id.*)

Despite Plaintiff's support of Goodnough, Sheriff Crutchfield won the primary election and eventually the general election, thus remaining Monroe County Sheriff. (Pl.'s Resp. at 5.)[3]

In January, 2009, another series of promotions took place. (Defs.' Mot. for Summ. J. at 6.) Sheriff Crutchfield first promoted Deputy Heath Velliquette ("Velliquette") (who was first on the 2008-2009 promotion list) to the sergeant position. (Pl.'s Resp. at 5.) Then, several days after the Velliquette promotion, Sheriff Crutchfield promoted Deputy Thomas Redmond (who was third on the 2008-2009 promotion list at the time of the Velliquette promotion). (Pl.'s Dep. at 107.) Plaintiff continues to believe that this second bypass was a direct result of the cumulative effect of his Board vote in 2004 and his recent support of Goodnough in the 2008 election. (*Id.*) Plaintiff grieved this promotion bypass;

---

[3]Plaintiff also contends that the Sheriff's Office changed a pre-existing schedule that forced him to work seven straight days at the Monroe County Fair, without overtime pay, in July, 2008, because of his support of Goodnough. (Pl.'s Dep. at 85-87.) After the schedule change, Plaintiff recalls that he had a conversation with La Montaine; he suggested to La Montaine that the reasoning behind his schedule change was that the Sheriff's Office was retaliating against him for supporting Goodnough. (*Id.* at 85.) Plaintiff adds that La Montaine "also believed that [(the retaliatory motive)], and was concerned that there may be more of it." (*Id.*) What La Montaine remembers from the conversation is that he told Plaintiff that his schedule was changed as well and that he worked every day of the fair the year before. (La Montaine Dep. at 31-32.) Sheriff Crutchfield was made aware of Plaintiff's displeasure at the scheduling, but holds that he has no duties in the scheduling, other than making sure all the shifts are covered. (Crutchfield Dep. at 92.)

again the Monroe County denied the grievance and again the union refused to arbitrate. (*Id.*)

## III. Analysis

### A. First Amendment Retaliation

Plaintiff's two-count complaint alleges that Sheriff Crutchfield violated Plaintiff's First Amendment rights to vote and to support a political candidate. In order to establish a claim for First Amendment retaliation, Plaintiff must demonstrate that:

> (1) he engaged in constitutionally protected speech or conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two–that is, the adverse action was motivated at least in part by his protected conduct.

*Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 399 (6th Cir. 2010) (internal citations omitted). Plaintiff can establish the first two elements of a retaliation claim. His claim therefore hinges on whether he can establish a causal connection between the two elements. His claim fails at this third element because a plaintiff wishing to show a causal connection must present evidence linking a First Amendment right to an adverse action and Plaintiff has failed to make such a showing.

#### 1. Plaintiff Engaged in Constitutionally Protected Speech and Conduct

Plaintiff must prove that he engaged in constitutionally protected speech and conduct. To do so, he must show that "his speech [or conduct] touches on a matter of public concern and demonstrate that his interest in the speech outweighs the government's countervailing interest in promoting the efficiency of the public service it provides as an employer." *Vereecke v. Huron Valley Sch. Dist.*, No. 07-13700, 2008 WL 2744745, at *10, (E.D. Mich

9

July 14, 2008) *aff'd* 609 F.3d 392 (6th Cir. 2010).  Whether the speech at issue involves a matter of public concern is a question of law for the court, although there may be some factual questions for a jury if it is disputed whether the expression occurred or what words were specifically stated." *Hughes v. Region VII Area Agency on Aging*, 542 F.3d 169, 180 (6th Cir. 2008) (quoting *Farhat v. Jopke*, 370 F.3d 580, 589 (6th Cir. 2004)).  A court must assess "the content, form, and context of a given statement, as revealed by the whole record."  *Id.* (Quoting *Connick v. Myers*, 461 U.S. 138, 147-48 (1983)).

### a. The First Amendment Protects Plaintiff's Board Vote

The First Amendment protects Plaintiff's right to vote on the Board.  "Voting by members of . . . boards, commissions, and authorities comes within the heartland of the First Amendment doctrine, and the status of public officials' votes as constitutionally protected speech [is] established beyond a peradventure of doubt[.]"  *Mihos v. Swift*, 358 F.3d 91, 109 (1st Cir. 2004) quoting *Stella v. Kelley*, 63 F.3d 71, 75 (1st Cir. 1995).

A school's budget is a matter of public concern.  *See Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205, Will County, Illinois*, 391 U.S. 563, 571 (1968); *See also Lander v. Summit County Sch. Dist.*, No. 02-1160, 109 Fed.Appx. 215, 218-19; 2004 WL 1809525, at *4 (10th Cir. Aug. 13, 2004) (also holding that a school's budget was a matter of public concern).  In *Pickering*, the Court held that the First Amendment protected a teacher's public statements about the allocation of school funds and no governmental interest outweighed that right.  *Pickering*, 391 U.S. at 574-75.

Here, Plaintiff has the right to cast his vote on the Board, the vote is a matter of public concern, no governmental interest outweighs this right, and as a result, Plaintiff has

10

established the first element of a First Amendment retaliation claim with regards to his vote on the Board.

### b. The First Amendment Protects Plaintiff's Right to Campaign for A Political Candidate

Plaintiff also has the constitutional right to support the candidate of his choice and "engage in speech indicating the level of that support." *Watts v. Day*, No. 04-1748, 129 Fed.Appx. 227, 232; 2005 WL 943696, at *4 (6th Cir. Apr. 22, 2005), citing *Glasson v. City of Louisville*, 518 F.2d 899, 904 (6th Cir. 1975). The right to support a candidate for an elected position is also a matter of public concern. *Watts*, 129 Fed.Appx. at 234. In *Watts*, the Sixth Circuit declared a private attorney's right to support an elected judicial candidate; the court stated:

> Clearly, a decision to make oneself a candidate for an elective judicial office is a matter of public concern. So, too, is the decision of private attorneys serving in those courts to endorse candidates who they feel will improve the machinery for the delivery and administration of justice. Additionally, given the complete and utter lack of any governmental interest in suppressing such speech, a balancing of competing interests decisively tips the scales in favor of recognition of the protected nature of the plaintiffs' expressions.

*Id.*

The Court finds Plaintiff's support of a candidate for the elected sheriff's position analogous to the situation in *Watts*. Here then, Plaintiff has satisfied the first element of First Amendment retaliation regarding his campaign support of Goodnough: the First Amendment protects his support, his support is a matter of public concern, and no governmental interest outweighs his right.

### 2. Plaintiff Suffered An Adverse Employment Action

The failure to promote is an adverse employment action. *Thaddeus-X*, 175 F.3d at 396. Plaintiff has shown that he was not promoted on two separate occasions. He therefore has suffered an adverse employment action and satisfies the second element of his retaliation claim.

### 3. Plaintiff Fails to Establish A Causal Connection Between His Protected Speech and Conduct and His Adverse Employment Action

Plaintiff has shown that he engaged in constitutionally protected speech and conduct and that he has suffered an adverse employment action. Now Plaintiff must prove "a causal connection between the protected conduct and the adverse action." *Vereecke*, 609 F.3d at 399 (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 399 (6th Cir. 1999)). In a summary judgment motion, bare allegations of malice are insufficient to establish the necessary motive for a constitutional claim. *Id.* at 399-400 (internal quotation marks and citation omitted). A court may look to circumstantial evidence in assessing a plaintiff's retaliation claim, such as timing of events or the disparate treatment of similarly situated individuals. *Id.* at 400.

For Plaintiff to succeed on his claim, he must demonstrate "that the speech at issue represented a substantial or motivating factor in the adverse employment action. Specifically, [he] must point to specific, nonconclusory allegations reasonably linking [his] speech to employer [action]." *Id.* (citing *Rodgers v. Banks*, 344 F.3d 587, 602 (6th Cir. 2003). The Sixth Circuit has "interpreted this inquiry to mean that a motivating factor is essentially but-for cause–without which the action being challenged simply would not have been taken." *Id.* (Internal quotation marks and citations omitted.) If Plaintiff proves "that his protected conduct was a motivating factor behind any harm, the burden of production

shifts to the defendant.  If a defendant can show that it would have taken the same action in the absence of the protected activity, it is entitled to prevail on summary judgment." *Id*.

### a. Plaintiff Has Not Proven That His Board Vote Motivated Sheriff Crutchfield's Failure to Promote Him

Plaintiff has not persuaded the Court that his Board vote motivated Sheriff Crutchfield's failure to promote Plaintiff.  Plaintiff offers Sandy Galimberti's knowledge of a conversation between her husband and Major Larry Clock, in which Major Clock said that Plaintiff would not be promoted because he had not supported Sheriff Crutchfield.  (Pl.'s Dep. at 30-31.)  Without testimony from Major Clock, the Court cannot take this hearsay into consideration on a motion for summary judgment.  *See Jacklyn v. Schering-Plough Healthcare Products Sales Corp.*, 176 F.3d 921, 927 (6th Cir. 1999), "[h]earsay evidence may not be considered on summary judgment."  Nor can this Court consider Plaintiff's allegations that there were rumors around the Sheriff's Office regarding Sheriff Crutchfield's reasoning as to why he did not promote Plaintiff.  (Pl.'s Dep. at 30-31.)  Plaintiff, therefore, has not presented sufficient evidence to find that a causal link between Plaintiff's Board vote and his failure to receive a promotion.

### b. Plaintiff Has Not Proven That His Support of Goodnough Motivated Sheriff Crutchfield's Failure to Promote Him

Plaintiff has not persuaded the Court that his support of Goodnough in the 2008 election was a motivating factor in Sheriff Crutchfield's failure to promote Plaintiff.  Plaintiff offers the two La Montaine emails as evidence of a retaliatory motive.  But even viewing the evidence in the light most favorable to Plaintiff, he has not established that Sheriff Crutchfield ever requested La Montaine to send the emails, approved the emails, or even

13

saw the emails. (Pl.'s Dep. at 62-62; Crutchfield Dep. at 82, 87-88.) The only link between Sheriff Crutchfield and these emails is a comment from La Montaine stating that he did discuss the email with Sheriff Crutchfield, but that he did not remember the nature of the conversation. (La Montaine Dep. at 20.) Even if the Court were to take this link as true (noting that Sheriff Crutchfield did not recall such a conversation) the emails in no way show a retaliatory motive that establishes a causal link between Plaintiff's support of Goodnough and his failure to receive a promotion. (Crutchfield Dep. at 82.) Finally, Plaintiff offers a conversation he had with La Montaine in which Plaintiff believes La Montaine conveyed the belief that Sheriff Crutchfield retaliated against Plaintiff based on his Goodnough support. (Pl.'s Dep. at 85.) This allegation is not enough to survive a motion for summary judgment.

Plaintiff has failed to establish that either his vote or his campaign support was a substantial or motivating factor in his failure to receive a promotion. Because Plaintiff has not established a causal link between his First Amendment rights and his failure to receive a promotion, his claim fails.

**B.    Qualified Immunity and Municipal Liability**

Plaintiff argues that Sheriff Crutchfield is not entitled to qualified immunity and that Monroe County is liable for Sheriff Crutchfield's actions. Both of these arguments disappear because Plaintiff has failed to establish a First Amendment retaliation claim. *See Lockett v. Suardini*, 526 F.3d 866, 878 (6th Cir. 2008) (stating "[b]ased on our determination that . . . no constitutional rights were violated, we have no need to discuss the availability of qualified immunity for the defendants in this case."). *See Vereecke*, 609 F.3d at 404 (holding, [b]ecause the individual defendants did not violate his constitutional

rights under the First Amendment, [the plaintiff] cannot rely on their conduct to establish a claim for municipal liability." (Citation omitted.)

**IV. Conclusion**

For the foregoing reasons, the Court GRANTS Defendants' Motion for Summary Judgment.

        s/Nancy G. Edmunds
        Nancy G. Edmunds
        United States District Judge

Dated: October 6, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 6, 2010, by electronic and/or ordinary mail.

        s/Carol A. Hemeyer
        Case Manager